David J. Sutton (DJS 2000)
THE LAW OFFICES OF DAVID J. SUTTON, P.C.
65 Hilton Avenue
Garden City, New York 11530
T: (516) 294-8797
F: (516) 294-2758
david@dsuttonlaw.com

*Attorneys for Plaintiff,*
*Sandra M. Murdolo*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SANDRA M. MURDOLO,                                  Civil Action No.:

                        Plaintiff,

                                                    **COMPLAINT AND**
            v.                                      **JURY DEMAND**

GLL REAL ESTATE PARTNERS, INC. and
CHRISTIAN GOEBEL,

                        Defendants.
-------------------------------------------------------------X

        Plaintiff, by and through her attorneys, The Law Offices of David J. Sutton,

P.C., complains against defendants, as follows:

## NATURE OF ACTION

        1.      Plaintiff alleges that defendants engaged in unlawful employment

discrimination practices by willfully paying plaintiff less than they paid male

employees who performed equal work.  Plaintiff's claims in this action are brought

pursuant to the Equal Pay Act ("EPA"), 29 U.S.C. § 206 *et seq.*

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction under 28 U.S.C. § 1331, because this action is brought under the Equal Pay Act, 29 U.S.C. § 206 *et seq.*

3.      Venue is proper, because the unlawful employment practices giving rise to this action occurred within the Southern District of New York.

## THE PARTIES

4.      At all times relevant herein, plaintiff—a female—was employed by defendant, GLL Real Estate Partners, Inc. ("GLL").

5.      At all times relevant herein, GLL was and is a business corporation formed under the laws of the State of Delaware, registered with and authorized to conduct business in the State of New York and maintaining a place of business at GLL Real Estate Partners, 200 Park Avenue South, Suite 1707, New York, New York 10166.

6.      At all times relevant herein, defendant, Christian Goebel ("Goebel"), was and is a male residing in the State of New York and employed by GLL as an Executive Vice President.

## FACTS

7.      GLL is an international asset management company based in Munich, Germany, with its U.S. headquarters in San Francisco, California.  GLL specializes in real estate investment products for institutional clients.

8.      On or around March 10, 2008, plaintiff commenced her employment as an Asset Manager in Respondent GLL's Orlando, Florida office.

9.      GLL's Asset Managers are responsible for managing various assigned real estate assets owned by GLL's clients, while also monitoring, analyzing, reporting/advising on the investment performance of each such asset.

10.      During her employment with GLL, plaintiff managed assets throughout the East Coast of the United States.

11.      On or about July 22, 2015, plaintiff filed a charge of employment discrimination against defendants with the New York City Commission on Human Rights ("NYCCHR").

12.      That NYCCHR charge—the investigation of which remains pending—is based, in part, on the same set of facts and charges of discrimination and unequal pay set forth in this Complaint.

13.      As part of their September 30, 2015 answer and statement of position in response to that charge, defendants provided a chart showing salaries and bonuses for various GLL employees over the period 2008 through 2015 ("Chart").

3

14.     Beginning in or around early 2013 and continuing until January 23, 2015, Goebel directly supervised plaintiff.

15.     Beginning in or around early 2013, Goebel told plaintiff, "Gee, you get paid a lot," or words to that effect, on at least two occasions.

16.     Upon information and belief, Goebel did not make similar comments to GLL's male Asset Managers.

17.     In or around 2013, plaintiff met with Goebel in preparation for establishing GLL's New York office.  During the meeting, plaintiff asked Goebel for a pay raise based on her exceptional performance and qualifications.

18.     Goebel denied plaintiff's request for a raise.

19.     Upon information and belief, and, as the Chart indicates, GLL's male Asset Managers were given raises at or around that time.

20.     In or around March 2014, plaintiff transitioned from GLL's Orlando, Florida office to GLL's New York office, located at 200 Park Avenue South, Suite 1707, New York, New York 10166.

21.     Soon after her move to the New York office, plaintiff asked Goebel for a pay raise consistent with the cost of living in New York.

22.     Goebel denied plaintiff's request and again stated, "Gee, you get paid a lot," or words to that effect.

23.    In or around June 2014, defendants held a party to commemorate the opening of the New York office.    Several industry leaders were present. Consistent with her job title and responsibilities, plaintiff expected to informally meet with those industry leaders during the event.

24.    During the party, Goebel asked plaintiff to perform various housekeeping tasks outside of her job description, including managing the catering staff and running errands.

25.    Due to those tasks, plaintiff was unable to sustain a consistent presence with and among the industry leaders in attendance at the party. Moreover, one of those errand-type tasks resulted in plaintiff's complete absence from the last 30-60 minutes of the party, which deprived plaintiff of the opportunity to be present for those industry leaders' departure from the party.

26.    On multiple occasions between March 2014 and December 2014, Goebel asked plaintiff to perform various administrative tasks, not consistent with her job description, including mailing Goebel's personal correspondence.

27.    On or around April 27, 2014, GLL held a meeting in the New York office with investors of properties in plaintiff's portfolio.

28.    Goebel told plaintiff that she did not need to be present at the meeting and instead asked her to perform various housekeeping tasks in

preparation, including ensuring there were certain beverages for the guests and sufficient silver and glassware.

29.     In or around December 2014, plaintiff gave a presentation to GLL's investors via teleconference, including to investors of the three most valuable properties in her portfolio.

30.     One day later, and despite plaintiff's having received positive feedback from colleagues regarding that presentation, Goebel removed those properties from plaintiff's portfolio and re-assigned them to less-experienced, male Asset Managers.

31.     On January 23, 2015, plaintiff's employment was terminated by Goebel at her annual review.

32.     When Goebel terminated plaintiff's employment on January 23, 2015, Goebel said, *inter alia,* words to the effect of: (i) "We have decided to terminate your employment," (ii)"Your portfolio has very few assets," (iii) "What did you think? We don't want to have you just sit here and collect a check," and (iv) "Let's not make this messy."

33.     Plaintiff's final paycheck from GLL was issued on January 30, 2015.

34.     From March 10, 2008 through January 23, 2015, GLL's male Asset Managers were paid more than plaintiff.

35.     From March 10, 2008 through January 23, 2015, GLL's male Asset Managers were not asked to perform housekeeping responsibilities.

36.     As the Chart reveals, at least two other male GLL employees—Asset Managers—were paid more than plaintiff during the limitations period covered by plaintiff's claims.

37.     In fact, during the period reflected in the Chart, it was known and understood throughout GLL that certain Asset Managers were viewed as "Senior Asset Managers" due to their credentials, experience, level of responsibility and record of accomplishment at GLL.

38.     Plaintiff was among those "Senior Asset Managers."  One of the other "Senior Asset Managers"—a male—is identified in the Chart.

39.     According to the Chart, however, that male "Senior Asset Manager" was paid far more than plaintiff from 2008 through 2015.

40.     In fact, in 2010, two of GLL's most important assets—both situated in Boston's Financial District—were reassigned to plaintiff from that male "Senior Asset Manager."

41.     That reassignment notwithstanding, the male "Senior Asset Manager" was paid at least $55,000 more than plaintiff in 2010, and GLL continued to pay him far more than plaintiff through and until January 30, 2015.

42.    Also, plaintiff was the most experienced and credentialed Asset Manager at GLL.

43.    In fact, many of GLL's clients are represented by German-speaking individuals, and plaintiff was the only Asset Manager fluent in German, which enabled her to more effectively communicate with and relate to much of GLL's target audience, as compared to other Asset Managers.

44.    Plaintiff's qualifications earned her the assignment of many of GLL's most important, high-stakes assets.

45.    Plaintiff's qualifications and level of responsibility, however, were not reflected in her compensation, which was far less than that of GLL's male Asset Managers.

46.    The Chart illustrates that one male Asset Manager was paid $30,000 more than plaintiff in 2013 ($220,000 compared to $190,000) and $60,000 more than plaintiff in 2014 ($225,000 compared to ($165,000).

47.    The same rate of disparity in pay between that male Asset Manager and plaintiff from 2014 continued through plaintiff's final paycheck from GLL, which was issued on January 30, 2015.

48.    The Chart further reveals that the aforementioned male "Senior Asset Manager" was paid: $61,000 more than plaintiff in 2008 ($245,000 compared to $184,000); $30,000 more than plaintiff in 2009 ($225,000 compared to $195,000);

8

$55,000 more than plaintiff in 2010 ($255,000 compared to $200,000); $30,000 more than plaintiff in 2011 ($230,000 compared to $190,000); $40,000 more than plaintiff in 2012 ($230,000 compared to $190,000); $70,000 more than plaintiff in 2013 ($260,000 compared to $190,000); and $100,000 more than plaintiff in 2014 ($265,000 compared to $165,000).

49.     The same rate of disparity in pay between that male "Senior Asset Manager" and plaintiff from 2014 continued through plaintiff's final paycheck from GLL, which was issued on January 30, 2015.

50.     That Chart also fails to identify or show the compensation for another male "Senior Asset Manager" who was employed with GLL during the relevant time period.

51.     Upon information and belief, that other male "Senior Asset Manager" was paid more than plaintiff during the relevant time period.

52.     The Chart also indicates that two other male GLL employees with lesser job roles/titles than Asset Manager were paid larger bonuses than plaintiff from 2011 through 2014.

53.     One such male employee—a "Property Manager" who, according to the chart, spends "25% of time in asset management"—was paid: $5,000 more in bonuses than plaintiff in 2011; $10,000 more in bonuses than plaintiff in 2012;

$20,000 more in bonuses than plaintiff in 2013; and $45,000 more in bonuses than plaintiff in 2014.

54.     Another such male employee—an "Acquisitions Analyst" who, according to the chart, spends "20% of time in asset management"—was paid: $5,000 more in bonuses than plaintiff in 2011; $15,000 more in bonuses than plaintiff in 2012; $35,000 more in bonuses than plaintiff in 2013; and $60,000 more in bonuses than plaintiff in 2014.

55.     Defendants knew that their conduct in paying lower wages to plaintiff than other male Asset Managers was a violation of the EPA.

56.     Plaintiff was adversely affected by the foregoing willful acts of defendants.

57.     The effect of defendants' foregoing willful acts was to deprive plaintiff of equal employment opportunities and otherwise adversely affect her earnings and her status as an employee because of her gender.

58.     The unlawful practices of defendants in this regard were intentional.

59.     The unlawful practices of defendants were done with malice and/or with reckless indifference to the federally-protected rights plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
(Equal Pay Act)

60.     Plaintiff repeats and realleges all of the contents of all of the prior paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

61.     Throughout the limitations period covered by these claims, defendants knowingly and willfully paid plaintiff less than they paid male employees who performed equal work, in violation of the Equal Pay Act, 29 U.S.C. Section 206(d)(1).

62.     Defendants' failure to pay plaintiff the same rate of pay that they paid male employees who performed equal work was willful within the meaning of the Equal Pay Act.

## DEMAND FOR JURY TRIAL

63.     Pursuant to Fed.R.Civ.P. Rule 38(b), plaintiff hereby demands a trial by jury of all claims and causes of action made by plaintiff in the within action and in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

a.   lost wages and benefits;

b.   liquidated damages;

c.   attorneys' fees and costs;

11

    d.  pre-judgment and post-judgment interest and costs; and

    e.  such other and further relief as this Court deems just and proper.

Dated:  January 30, 2017
        Garden City, New York

                           Respectfully submitted,

                           THE LAW OFFICES OF
                           DAVID J. SUTTON, P.C.

                           By: _____
                                 David J. Sutton (DJS 2000)
                               65 Hilton Avenue
                               Garden City, New York 11530
                               T: (516) 294-8797
                               F: (516) 294-2758
                               david@dsuttonlaw.com

                               *Attorneys for Plaintiff,*
                               *Sandra M. Murdolo*